1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HILDA A. SOLIS, Secretary of Labor,
     United States Department of Labor
11

12            Plaintiff,              No. 2: 11-cv-1706 JAM JFM

13        vs.

14   ORLAND SAND & GRAVEL CORP.,

15            Defendant.              FINDINGS AND RECOMMENDATIONS

16   _____/

17                        I.  INTRODUCTION

18            Plaintiff, Hilda A. Solis, the Secretary of Labor, filed this complaint against the

19   defendant, Orland Sand & Gravel Corp. ("Orland"), on June 24, 2011 seeking injunctive relief

20   pursuant to the Federal Mine Safety & Health Act ("the Act").  Plaintiff asserts that defendant

21   operates a sand and gravel crushing operation in Orland, California and that the operation

22   constitutes a mine as defined by the Act.  The complaint asserts that the Act gives the Secretary

23   of Labor's representatives the right to enter mine property to conduct safety and health

24   inspections.  The complaint alleges that plaintiff's inspectors have been prevented by defendant

25   from conducting safety and health inspections as defendant's operation site.  Defendant was

26   issued citations by the plaintiff for its failure to comply but still refused to allow plaintiff's

1

1  inspectors to inspect the site.

2        The complaint requests injunctive relief to enjoin defendant from:  (1) denying

3  authorized representatives of the Secretary of Labor from entering the site and permitting

4  inspection of defendant's site; (2) refusing to permit inspection of defendant's site and related

5  equipment; (3) interfering, hindering, or delaying plaintiff from carrying out the provisions of

6  the Act; and (4) refusing to comply with an order of withdrawal.  Additionally, plaintiff requests

7  an order for reimbursement of fees, costs, expenses and attorney fees associated with the action.

8        II.  PROCEDURAL HISTORY

9        On June 27, 2011, the district judge issued a temporary restraining order against

10  defendant.  Specifically, the court determined that:  (1) there is reasonable grounds to believe

11  that the defendant has violated and is continuing to violate the Act by denying entry to an

12  authorized representative of plaintiff to inspect the site; (2) the court has jurisdiction and the

13  power to restrain defendant from continuing to violate the Act; and (3) the public interest will be

14  irreparably harmed unless the defendant is restrained from continuing to violate the Act.  (See

15  Dkt. No. 5 at p. 2.)  Accordingly, the court temporarily restrained defendant from (1) denying

16  representatives of plaintiff from entry to permit inspection of defendant's site; (2) refusing to

17  permit inspection of the site; and (3) interfering with, hindering and delaying plaintiff's

18  representatives from carrying out the provisions of the Act.  (See id.)

19        On June 29, 2011, the court granted a preliminary injunction in favor of plaintiff

20  and against defendant which included the same injunctive relief as the temporary restraining

21  order described above.  The court further held that the "[p]reliminary injunction shall remain in

22  full force and effect until such time as the merits of Plaintiff's Complaint have been resolved, or

23  upon order of the court."  (Id. at p. 2.)  The docket reflects that the preliminary injunction issued

24  on June 29, 2011 remains in effect.

25        The summons and complaint were served on defendant by personal service on

26  November 16, 2011.  (See Dkt. No. 17.)  On December 9, 2011, the matter was referred back by

1  the undersigned to the district judge after it was noted that defendant is a corporation.  Defendant

2  attempted to appear in this action through its president/owner Dale Roy Bogart, which was

3  improper as he was not counsel.  (See Dkt. No. 19.)

4           After defendant did not file an answer, plaintiff requested entry of default.  (See

5  Dkt. No. 20.)  The clerk entered default on January 18, 2012.  (See Dkt. No. 21.)  On March 7,

6  2012, defendant filed a motion to vacate default and a motion to dismiss for lack of jurisdiction

7  through its company president, Bogart.  (See Dkt. No. 24.)  On April 5, 2012, plaintiff filed a

8  motion for summary judgment.  (See Dkt. No. 26.)  The court struck defendant's motion to

9  vacate the default as it was not filed through an attorney as required by law.  Furthermore, the

10  court struck plaintiff's motion for summary judgment as moot.  (See Dkt. No. 35.)

11           On September 13, 2012, plaintiff filed a motion for default judgment.  Defendant

12  did not file a response to the motion for default judgment nor did it appear at the hearing on the

13  motion conducted on December 20, 2012.

14           III.  LEGAL STANDARD FOR DEFAULT JUDGMENT

15           Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

16  party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

17  defend against the action.  See FED. R. CIV. P. 55(a).  However, "[a] defendant's default does not

18  automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

19  238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

20  (9th Cir. 1986)); see also FED. R. CIV. P. 55(b) (governing the entry of default judgments).

21  Instead, the decision to grant or deny an application for default judgment lies within the district

22  court's sound discretion.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making

23  this determination, the court may consider the following factors:

24          (1) the possibility of prejudice to the plaintiff; (2) the merits of
        plaintiff's substantive claim; (3) the sufficiency of the complaint;

25          (4) the sum of money at stake in the action; (5) the possibility of a
        dispute concerning material facts; (6) whether the default was due

26          to excusable neglect; and (7) the strong policy underlying the

1    Federal Rules of Civil Procedure favoring decisions on the merits.

2    Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

3    disfavored.  See id. at 1472.

4    As a general rule, once default is entered, well-pleaded factual allegations in the

5    operative complaint are taken as true, except for those allegations relating to damages.

6    TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

7    Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

8    Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

9    allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts

10   not contained in the pleadings, and claims which are legally insufficient, are not established by

11   default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning

12   v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); see also DIRECTV, Inc. v. Huynh, 503 F.3d

13   847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

14   admit conclusions of law." (citation and quotation marks omitted)); Abney v. Alameida, 334 F.

15   Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

16   insufficient claim.").  A party's default conclusively establishes that party's liability, although it

17   does not establish the amount of damages.  See Geddes, 559 F.2d at 560.

18   Additionally, "a corporation may appear in federal court only through licensed

19   counsel."  United States v. High Country Broadcasting, Co., Inc., 3 F.3d 1244, 1245 (9th Cir.

20   1993) (per curiam).  The Ninth Circuit has noted that it is perfectly appropriate to enter default

21   judgment against a corporation that has failed to retain counsel.  See id. (citing Shearson Loeb

22   Rhoades, Inc., 751 F.2d 1102 (9th Cir. 1985)).

23   IV.  DISCUSSION

24   The first Eitel factor considers whether plaintiff would suffer prejudice if default

25   judgment is not entered.  Potential prejudice to the plaintiff militates in favor of granting default

26   judgment.  See PepsiCo, Inc. 238 F. Supp.2d at 1177.  In this case, plaintiff will obviously suffer

4

1  prejudice if default judgment is not granted.  Defendant was served with the summons and

2  complaint over one year ago, yet has never answered the complaint.  Accordingly, this factor

3  favors granting the motion.[1]

4          The second and third factors of <u>Eitel</u> require the court to consider the merits of

5  plaintiff's substantive claims and the sufficiency of the complaint.  The issue is whether the

6  allegations in the complaint are sufficient to state a claim that supports the relief sought.

7          The Act permits the Secretary of Labor to bring a civil action for permanent

8  injunctive relief against an operator or agent of "a coal or other mine" under a number of

9  scenarios, including if the operator:

10             (A) violates or fails or refuses to comply with any order or
               decision issued under this chapter, or fails or refuses to comply
11             with any order or decision, including a civil penalty assessment
               order, that is issued under this chapter,
12             (B) interferes with, hinders, or delays the Secretary or his
               authorized representative, or the Secretary of Health and Human
13             Services or his authorized representative, in carrying out the
               provisions of this chapter,
14             © refuses to admit such representatives to the coal or other mine,
               (D) refuses to permit the inspection of the coal or other mine, or
15             the investigation of an accident or occupational disease occurring
               in, or connected with, such mine,
16             (E) refuses to furnish any information or report requested by the
               Secretary or the Secretary of Health and Human Services in
17             furtherance of the provisions of this chapter, or
               (F) refuses to permit access to, and copying of, such records as the
18             Secretary or the Secretary of Health and Human Services
               determines necessary in carrying out the provisions of this chapter.

19

20  30 U.S.C. § 818(a)(1).  The Act defines a "coal or other mine" as follows:

21             (A) an area of land form which minerals are extracted in nonliquid
               form or, if in liquid form, are extracted with workers underground,
22             (B) private ways and roads appurtenant to such area, and © lands,
               excavations, underground passageways, shafts, slopes, tunnels and
23             workings, structures, facilities, equipment, machines, tools, or
               other property including impoundments, retention dams, and
24             tailings ponds, on the surface or underground, used in, or to be

25  _____

26  [1] The prejudice to plaintiff is somewhat minimized however, as a preliminary injunction
    has been issued against defendant.

used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, or to be used in, the milling of such minerals, or the work of preparing coal or other minerals, and includes custom coal preparation facilities. In making a determination of what constitutes mineral milling for purposes of this chapter, the Secretary shall give due consideration to the convenience of administration resulting from the delegation to one Assistant Secretary of all authority with respect to the health and safety of miners employed at one physical establishment.

Id. § 802(h)(1). The Act applies to mines where the products enter commerce or the operations or products of which affect commerce. See id. § 803. The Act provides federal mine inspectors with a right of entry to conduct inspections and investigations into mines. See id. § 813(a). Furthermore, it permits inspectors to issue citations to the operator of the mine for violations of the Act. See id. § 814(a). The Act permits inspectors to issue an order of withdrawal from the mine if the operator has not cured earlier issued citations. See id. § 814(b).

Construing the complaint as true, it presents meritorious claims such that factors two and three of the Eitel analysis favor default judgment. It details why the Act applies; specifically why defendant's operation constitutes a mine and how its inspectors were prevented by defendant's agent (Bogart) from inspecting the mine. It also details how defendant continued to refuse plaintiff to inspect the mine after being issued a citation.

Under factor four, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff's complaint seeks injunctive relief. Thus, this factor does not does not weigh in favor of granting default judgment.

The fifth factor examines the possibility of a dispute concerning material facts. The court accepts the facts in the complaint as true. See TeleVideo, 826 F.2d at 917-18. Accordingly, there is no genuine dispute of material facts. This factor favors default judgment.

The sixth factor asks whether the default was due to excusable neglect. The default in this case was not the result of excusable neglect. Defendant was instructed that it

6

1  could not proceed without counsel.  Nevertheless, to date, defendant has not appeared with

2  counsel nor has defendant answered the complaint.  Thus, this factor favors default judgment.

3          The seventh factor notes the strong policy underlying the Federal Rules of Civil

4  Procedure favoring decisions on the merits.  However, courts have determined that this policy,

5  standing alone, is not dispositive.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Nevertheless, this

6  remains a factor worthy of consideration and does not favor default judgment.

7          Upon analyzing the Eitel factors discussed above, default judgment is appropriate.

8  Plaintiff will suffer prejudice if default judgment is not entered.  Furthermore, the merits of

9  plaintiff's claims and the sufficiency of the complaint are strong.  Additionally, there is not a

10 strong possibility of a dispute concerning material facts nor is the default due to excusable

11 neglect.  While the court recognizes the strong policy favoring decisions on the merits and the

12 fact that this case involves no sum of money, the remaining Eitel factors lead to a conclusion that

13 default judgment should be granted.

14                          V.  TERMS OF JUDGMENT

15         After determining that a party is entitled to entry of default judgment, the court

16 must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the

17 record in this case, the undersigned concludes that plaintiff is entitled to the injunctive relief it

18 seeks in the complaint.

19         The complaint also seeks "[a]n order requiring the Defendant to reimburse the

20 Secretary for all fees, costs, expenses and attorneys fees associated wit this action."  (See Dkt.

21 No. 1 at p. 6.)  However, its motion is devoid of any argument or evidence in support of its

22 request.[2]  Accordingly, the undersigned will not recommend the award of costs or attorneys'

23

24         [2] Plaintiff's proposed order of judgment includes language that, "The Secretary is
   awarded her costs in this action, including the cost of hiring a process server to serve the
25 Summons and Complaint on Defendant Orland Sand & Gravel Corporation."  (See Dkt. No. 39-7
   at p. 3.)  However, as previously described, plaintiff makes no argument or provides no evidence
26 to support its claim for costs.

fees.

## VI.  CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for default judgment (Dkt. No. 39.) be granted;

2.  The court enter judgment against defendant on plaintiff's claims brought under the Federal Mine Safety & Health Act of 1977, 30 U.S.C. §§ 801, et seq., ("the Act");

3.  The court grant the following injunctive relief to plaintiff:

a.  Defendant Orland Sand & Gravel Corporation has violated Sections 103 and 104(b) of the Act by denying entry to authorized representatives of the Secretary of Labor to inspect Defendant's mine and will continue to violate Sections 103 and 104(b) of the Act absent action by the court;

b.  Under Section 108(a) of the Act, 30 U.S.C. § 818(a), this court has the jurisdiction and the power to enjoin the Defendant from continuing to violate Sections 103 and 104(b) of the Act;

c.  The public interest will be irreparably harmed unless Defendant Orland Sand & Gravel Corporation is enjoined from continuing to violate Sections 103 and 104(b) of the Act.

d.  Defendant, its agents, servants, employees, and those persons in active concert or participation with it, are permanently enjoined from violating Section 103 of the Act by denying authorized representatives of the Secretary entry to and to permit the inspection of the Orland Sand and Gravel Corporation mine operated by the Defendant; refusing to permit inspection of the mine and related equipment; and interfering with, hindering and delaying the Secretary of Labor or her authorized representatives from carrying out the provisions of the Act;

e.  Defendant, its agents, servants, employees, and those persons in active

8

1    concert or participation with it, are permanently enjoined from violating

2    Section 104(b) of the Act by refusing to comply with Order of Withdrawal

3    No. 8613142; and

4         f.  This permanent injunction shall be served on the defendant or its

5    attorney.

6         These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8    days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11   shall be served and filed within fourteen days after service of the objections.  The parties are

12   advised that failure to file objections within the specified time may waive the right to appeal the

13   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14   DATED: January 7, 2013.

15

16                                        UNITED STATES MAGISTRATE JUDGE

17

18   14
     soli1706.dj
19

20

21

22

23

24

25

26