IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HILDA A. SOLIS, Secretary of Labor,
United States Department of Labor

        Plaintiff,              No. 2: 11-cv-1706 JAM JFM

    vs.

ORLAND SAND & GRAVEL CORP.,

        Defendant.         FINDINGS AND RECOMMENDATIONS

                               /

## I. INTRODUCTION

Plaintiff, Hilda A. Solis, the Secretary of Labor, filed this complaint against the defendant, Orland Sand & Gravel Corp. ("Orland"), on June 24, 2011 seeking injunctive relief pursuant to the Federal Mine Safety & Health Act ("the Act"). Plaintiff asserts that defendant operates a sand and gravel crushing operation in Orland, California and that the operation constitutes a mine as defined by the Act. The complaint asserts that the Act gives the Secretary of Labor's representatives the right to enter mine property to conduct safety and health inspections. The complaint alleges that plaintiff's inspectors have been prevented by defendant from conducting safety and health inspections as defendant's operation site. Defendant was issued citations by the plaintiff for its failure to comply but still refused to allow plaintiff's

inspectors to inspect the site.

The complaint requests injunctive relief to enjoin defendant from: (1) denying authorized representatives of the Secretary of Labor from entering the site and permitting inspection of defendant's site; (2) refusing to permit inspection of defendant's site and related equipment; (3) interfering, hindering, or delaying plaintiff from carrying out the provisions of the Act; and (4) refusing to comply with an order of withdrawal. Additionally, plaintiff requests an order for reimbursement of fees, costs, expenses and attorney fees associated with the action.

## II. PROCEDURAL HISTORY

On June 27, 2011, the district judge issued a temporary restraining order against defendant. Specifically, the court determined that: (1) there is reasonable grounds to believe that the defendant has violated and is continuing to violate the Act by denying entry to an authorized representative of plaintiff to inspect the site; (2) the court has jurisdiction and the power to restrain defendant from continuing to violate the Act; and (3) the public interest will be irreparably harmed unless the defendant is restrained from continuing to violate the Act. (See Dkt. No. 5 at p. 2.) Accordingly, the court temporarily restrained defendant from (1) denying representatives of plaintiff from entry to permit inspection of defendant's site; (2) refusing to permit inspection of the site; and (3) interfering with, hindering and delaying plaintiff's representatives from carrying out the provisions of the Act. (See id.)

On June 29, 2011, the court granted a preliminary injunction in favor of plaintiff and against defendant which included the same injunctive relief as the temporary restraining order described above. The court further held that the "[p]reliminary injunction shall remain in full force and effect until such time as the merits of Plaintiff's Complaint have been resolved, or upon order of the court." (Id. at p. 2.) The docket reflects that the preliminary injunction issued on June 29, 2011 remains in effect.

The summons and complaint were served on defendant by personal service on November 16, 2011. (See Dkt. No. 17.) On December 9, 2011, the matter was referred back by

the undersigned to the district judge after it was noted that defendant is a corporation. Defendant attempted to appear in this action through its president/owner Dale Roy Bogart, which was improper as he was not counsel. (See Dkt. No. 19.)

After defendant did not file an answer, plaintiff requested entry of default. (See Dkt. No. 20.) The clerk entered default on January 18, 2012. (See Dkt. No. 21.) On March 7, 2012, defendant filed a motion to vacate default and a motion to dismiss for lack of jurisdiction through its company president, Bogart. (See Dkt. No. 24.) On April 5, 2012, plaintiff filed a motion for summary judgment. (See Dkt. No. 26.) The court struck defendant's motion to vacate the default as it was not filed through an attorney as required by law. Furthermore, the court struck plaintiff's motion for summary judgment as moot. (See Dkt. No. 35.)

On September 13, 2012, plaintiff filed a motion for default judgment. Defendant did not file a response to the motion for default judgment nor did it appear at the hearing on the motion conducted on December 20, 2012.

### III. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See FED. R. CIV. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see also FED. R. CIV. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the

Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. See id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); see also DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." (citation and quotation marks omitted)); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. See Geddes, 559 F.2d at 560.

Additionally, "a corporation may appear in federal court only through licensed counsel." United States v. High Country Broadcasting, Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam). The Ninth Circuit has noted that it is perfectly appropriate to enter default judgment against a corporation that has failed to retain counsel. See id. (citing Shearson Loeb Rhoades, Inc., 751 F.2d 1102 (9th Cir. 1985)).

## IV. DISCUSSION

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered. Potential prejudice to the plaintiff militates in favor of granting default judgment. See PepsiCo, Inc. 238 F. Supp.2d at 1177. In this case, plaintiff will obviously suffer

prejudice if default judgment is not granted. Defendant was served with the summons and complaint over one year ago, yet has never answered the complaint. Accordingly, this factor favors granting the motion.[1]

The second and third factors of Eitel require the court to consider the merits of plaintiff's substantive claims and the sufficiency of the complaint. The issue is whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.

The Act permits the Secretary of Labor to bring a civil action for permanent injunctive relief against an operator or agent of "a coal or other mine" under a number of scenarios, including if the operator:

> (A) violates or fails or refuses to comply with any order or decision issued under this chapter, or fails or refuses to comply with any order or decision, including a civil penalty assessment order, that is issued under this chapter,
> (B) interferes with, hinders, or delays the Secretary or his authorized representative, or the Secretary of Health and Human Services or his authorized representative, in carrying out the provisions of this chapter,
> © refuses to admit such representatives to the coal or other mine,
> (D) refuses to permit the inspection of the coal or other mine, or the investigation of an accident or occupational disease occurring in, or connected with, such mine,
> (E) refuses to furnish any information or report requested by the Secretary or the Secretary of Health and Human Services in furtherance of the provisions of this chapter, or
> (F) refuses to permit access to, and copying of, such records as the Secretary or the Secretary of Health and Human Services determines necessary in carrying out the provisions of this chapter.

30 U.S.C. § 818(a)(1). The Act defines a "coal or other mine" as follows:

> (A) an area of land form which minerals are extracted in nonliquid form or, if in liquid form, are extracted with workers underground,
> (B) private ways and roads appurtenant to such area, and © lands, excavations, underground passageways, shafts, slopes, tunnels and workings, structures, facilities, equipment, machines, tools, or other property including impoundments, retention dams, and tailings ponds, on the surface or underground, used in, or to be

---

[1] The prejudice to plaintiff is somewhat minimized however, as a preliminary injunction has been issued against defendant.

5

> used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form, or if in liquid form, with workers underground, or used in, or to be used in, the milling of such minerals, or the work of preparing coal or other minerals, and includes custom coal preparation facilities. In making a determination of what constitutes mineral milling for purposes of this chapter, the Secretary shall give due consideration to the convenience of administration resulting from the delegation to one Assistant Secretary of all authority with respect to the health and safety of miners employed at one physical establishment.

Id. § 802(h)(1). The Act applies to mines where the products enter commerce or the operations or products of which affect commerce. See id. § 803. The Act provides federal mine inspectors with a right of entry to conduct inspections and investigations into mines. See id. § 813(a). Furthermore, it permits inspectors to issue citations to the operator of the mine for violations of the Act. See id. § 814(a). The Act permits inspectors to issue an order of withdrawal from the mine if the operator has not cured earlier issued citations. See id. § 814(b).

Construing the complaint as true, it presents meritorious claims such that factors two and three of the Eitel analysis favor default judgment. It details why the Act applies; specifically why defendant's operation constitutes a mine and how its inspectors were prevented by defendant's agent (Bogart) from inspecting the mine. It also details how defendant continued to refuse plaintiff to inspect the mine after being issued a citation.

Under factor four, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff's complaint seeks injunctive relief. Thus, this factor does not does not weigh in favor of granting default judgment.

The fifth factor examines the possibility of a dispute concerning material facts. The court accepts the facts in the complaint as true. See TeleVideo, 826 F.2d at 917-18. Accordingly, there is no genuine dispute of material facts. This factor favors default judgment.

The sixth factor asks whether the default was due to excusable neglect. The default in this case was not the result of excusable neglect. Defendant was instructed that it

1 could not proceed without counsel. Nevertheless, to date, defendant has not appeared with
2 counsel nor has defendant answered the complaint. Thus, this factor favors default judgment.

3 The seventh factor notes the strong policy underlying the Federal Rules of Civil
4 Procedure favoring decisions on the merits. However, courts have determined that this policy,
5 standing alone, is not dispositive. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Nevertheless, this
6 remains a factor worthy of consideration and does not favor default judgment.

7 Upon analyzing the Eitel factors discussed above, default judgment is appropriate.
8 Plaintiff will suffer prejudice if default judgment is not entered. Furthermore, the merits of
9 plaintiff's claims and the sufficiency of the complaint are strong. Additionally, there is not a
10 strong possibility of a dispute concerning material facts nor is the default due to excusable
11 neglect. While the court recognizes the strong policy favoring decisions on the merits and the
12 fact that this case involves no sum of money, the remaining Eitel factors lead to a conclusion that
13 default judgment should be granted.

## V. TERMS OF JUDGMENT

15 After determining that a party is entitled to entry of default judgment, the court
16 must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the
17 record in this case, the undersigned concludes that plaintiff is entitled to the injunctive relief it
18 seeks in the complaint.

19 The complaint also seeks "[a]n order requiring the Defendant to reimburse the
20 Secretary for all fees, costs, expenses and attorneys fees associated wit this action." (See Dkt.
21 No. 1 at p. 6.) However, its motion is devoid of any argument or evidence in support of its
22 request.[2] Accordingly, the undersigned will not recommend the award of costs or attorneys'

---

[2] Plaintiff's proposed order of judgment includes language that, "The Secretary is awarded her costs in this action, including the cost of hiring a process server to serve the Summons and Complaint on Defendant Orland Sand & Gravel Corporation." (See Dkt. No. 39-7 at p. 3.) However, as previously described, plaintiff makes no argument or provides no evidence to support its claim for costs.

7

fees.

## VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Dkt. No. 39.) be granted;

2. The court enter judgment against defendant on plaintiff's claims brought under the Federal Mine Safety & Health Act of 1977, 30 U.S.C. §§ 801, et seq., ("the Act");

3. The court grant the following injunctive relief to plaintiff:

    a. Defendant Orland Sand & Gravel Corporation has violated Sections 103 and 104(b) of the Act by denying entry to authorized representatives of the Secretary of Labor to inspect Defendant's mine and will continue to violate Sections 103 and 104(b) of the Act absent action by the court;

    b. Under Section 108(a) of the Act, 30 U.S.C. § 818(a), this court has the jurisdiction and the power to enjoin the Defendant from continuing to violate Sections 103 and 104(b) of the Act;

    c. The public interest will be irreparably harmed unless Defendant Orland Sand & Gravel Corporation is enjoined from continuing to violate Sections 103 and 104(b) of the Act.

    d. Defendant, its agents, servants, employees, and those persons in active concert or participation with it, are permanently enjoined from violating Section 103 of the Act by denying authorized representatives of the Secretary entry to and to permit the inspection of the Orland Sand and Gravel Corporation mine operated by the Defendant; refusing to permit inspection of the mine and related equipment; and interfering with, hindering and delaying the Secretary of Labor or her authorized representatives from carrying out the provisions of the Act;

    e. Defendant, its agents, servants, employees, and those persons in active

concert or participation with it, are permanently enjoined from violating Section 104(b) of the Act by refusing to comply with Order of Withdrawal No. 8613142; and

 f. This permanent injunction shall be served on the defendant or its attorney.

 These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 7, 2013.

UNITED STATES MAGISTRATE JUDGE

14
soli1706.dj